IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| FRANK ALEXANDER WALLMULLER, ) | |
| ) | Case No. CV04-053-S-MHW |
| Plaintiff, ) | |
| ) | **MEMORANDUM ORDER** |
| vs. ) | |
| ) | |
| KENNETH BENNETT, JOHN HARDISON, ) | |
| DAN MAHANEY, and DOES 1-5, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

Pending before the Court are Plaintiff's Motion to Quash (Docket No. 112), Defendants' Motion to Compel (Docket No. 116), Plaintiff's Motion to Allow Telephonic Deposition of Plaintiff (Docket No. 120), Defendant Bennett's and Hardison's Motion for Summary Judgment (Docket No. 121), Defendant Mahaney's Joinder in the Motion for Summary Judgment (Docket No. 123), and Defendants' Motion to Strike Plaintiff's Late Response to Motion for Summary Judgment (Docket No. 132).

The Court extended Plaintiff's time period for response to the Motion for Summary Judgment through October 31, 2005. Plaintiff filed an untimely response on

**MEMORANDUM ORDER  1**

November 16, 2005; nevertheless, the Court has considered it and denies Defendants' Motion to Strike.  Plaintiff filed a Supplement Affidavit on November 30, 2005 (Docket No. 133), which the Court will strike for failure to comply with the time limits earlier set by the Court for response to the Motion for Summary Judgment.

All parties have consented to the jurisdiction of a United States Magistrate Judge to enter final orders in this case.  Having reviewed the written motions and responses, the Court enters the following Order.

## I.

## DISCOVERY MOTIONS

Defendants scheduled Plaintiff's deposition in Boise, Idaho, where Plaintiff resided and was incarcerated when he began this litigation, but Plaintiff refused to attend because he had been released and was living in Washington.  The IDOC Defendants filed a Motion to Compel (Docket No. 116), which Defendant Mahaney joined.  Plaintiff has filed a Motion to Quash (Docket No. 112) and Motion to Allow Telephonic Deposition of Plaintiff (Docket No. 120).

Plaintiff states that he is on a fixed SSI income and cannot attend a deposition in Boise.  Plaintiff has not provided any details of his income or expenses, and he has been out of prison for nearly a year.  Plaintiff provides a letter he wrote to Defendants' counsel, which contains no details of his financial circumstances, but states only that he cannot afford "airline tickets, etc." to Boise.  *See* Docket 113.  Plaintiff has not shown that he cannot take a bus for a substantially reduced amount.  Plaintiff apparently utilizes the

**MEMORANDUM ORDER  2**

public transportation system often and very adeptly, as noted in his Affidavit (Docket No. 124-2).[1]

As a result, the Court finds that Plaintiff has not shown that he is unable to attend a deposition in Boise, and it will be less expensive and more efficient to have Plaintiff take a bus to Boise than to have a billable-hour attorney and his client travel to Washington, rent space for a deposition, and find a court reporter in a different state.  Plaintiff alternatively requests a telephonic deposition.  However, a telephonic deposition will not allow Defendant Mahaney's counsel to adequately observe Plaintiff's demeanor to prepare for trial.  Accordingly, Plaintiff shall be required to attend a deposition as scheduled by Defendant.  Defendants shall provide Plaintiff with three alternative dates to attend a deposition in December or January.  Plaintiff shall notify Defendants which of the dates he wishes to attend.  The Court will entertain a motion to dismiss this case if Plaintiff fails to attend the deposition.

The Court also notes that Plaintiff has failed to pay any portion of the filing fee. Plaintiff is ordered to pay the amount of $5.00 per month, beginning in January 2006, to the Clerk of Court, until the fee of $150.00 is paid in full.  Failure to pay the $5.00 per month shall result in dismissal of this case without further notice.

---

[1] The Court will entertain a motion from Plaintiff for payment of a reasonable economy-class bus fare through the Pro Se Pro Bono Program if he provides adequate documents and information regarding his income and expenses, including costs spent on his own litigation, local bus and ferry fares, and any e-mail and computer services.  Plaintiff should also state whether other persons share or pay for a portion of his expenses, and he should reveal all sources and amounts of public assistance he receives.

**MEMORANDUM ORDER  3**

## II.

## MOTION FOR SUMMARY JUDGMENT

### A.   STANDARD OF LAW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

In a motion for summary judgment, the moving party bears the "initial burden of identifying for the court those portions of the record which demonstrate the absence of any genuine issues of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986)). If the moving party points to portions of the record demonstrating that there appears to be no genuine issue of material fact as to claims or defenses at issue, the burden of production shifts to the non-moving party. To meet its burden of production, the non-moving party "may not rest upon the mere allegations contained in his complaint, but he must set forth, by affidavits, exhibits or otherwise, specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56; *see T.W. Electric Serv*., 809 F.2d at 630 (internal citation omitted).

Rule 56(c) requires the Court to enter summary judgment "against a party who

**MEMORANDUM ORDER  4**

fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby*, 477 U.S. at 252.

In § 1983 actions, the doctrine of qualified immunity protects state officials from personal liability for on-the-job conduct so long as the conduct is objectively reasonable and does not violate an inmate's clearly-established federal rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). Contrarily, a state official may be held personally liable in a § 1983 action if he knew or should have known that he was violating a plaintiff's clearly-established federal rights. *Id*.

The threshold question prior to considering whether a qualified immunity defense should be applied is this: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the [defendant's] conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)). It is important for a court to first conduct the inquiry of whether a constitutional right was violated on the grounds alleged, because "a court might find it necessary to set forth principles which will become the basis for a holding that a right is clearly established." *Id*. If no constitutional right would have been violated, the inquiry ends. *Id*.

If, viewing the alleged injuries in a light most favorable to the plaintiff, a

**MEMORANDUM ORDER  5**

constitutional right appears to have been violated, the Court proceeds to the next step, which is to inquire whether the right was clearly established.  *Id*.  To determine whether the right was clearly established, a court turns to Supreme Court and Ninth Circuit law existing at the time of the alleged act.  *Osolinski v. Kane*, 92 F.3d 934, 936 (9th Cir. 1996) (citation omitted).  In the absence of binding precedent, the district courts should look to available decisions of other circuits and district courts to ascertain whether the law is clearly established.  *Id.* (citation omitted).

The Ninth Circuit has recently clarified that, in the context of a summary judgment motion, the district court must follow the analytical framework of Rule 56 when defendants asserting qualified immunity have challenged the truth of the facts alleged in the Complaint:

> [I]f a defendant moving for summary judgment has produced enough evidence to require the plaintiff to go beyond his or her pleadings, the plaintiff must counter by producing evidence of his or her own.  If in that circumstance the plaintiff fails to produce evidence, the district court is not required (or even allowed) to assume that the challenged factual allegations in the plaintiff's complaint are true.  Similarly, if in that circumstance the plaintiff produces evidence that is not enough, by itself, to create a genuine issue of material fact, the district court is not required (or even allowed) to assume the truth of challenged allegations in the complaint in order to supplement that evidence.  *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160-61 (1970); *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000).  If discovery has been curtailed by the district court because the defendant has asserted official immunity from suit, the district court may to some extent relax the evidentiary standards for the plaintiff in recognition of the restrictions on discovery, but the requirement that the plaintiff produce evidence nonetheless remains.  *See DiMartini v. Ferrin*, 889 F.2d 922, 926-27 (9th Cir. 1989).

**MEMORANDUM ORDER  6**

*Butler v. San Diego Dist. Attorney's Office*, 370 F.3d 956, 963 (9th Cir. 2004).

**B.  DISCUSSION**

Plaintiff makes two claims.  He asserts that between June 13, 2003, and November 7, 2003, Defendants refused to allow him to attend Jumu'ah prayer services for his Muslim faith every Friday in the non-denominational chapel at SICI, violating his First and Fourteenth Amendment rights.  He also asserts that Defendants knowingly refused to provide him with sack lunches during the Ramadan fasting period.

The facts are as follows.  Prior to June 16, 2003, while at the SICI ballfield, Plaintiff spoke with Defendant Chaplain Mahaney about attending Friday Jumu'ah services, "but Defendant Mahaney had his mind on something else at the time and said that he would get back with Plaintiff later."  *Plaintiff's Statement of Facts*, at p. 2 (Docket No. 129).  On June 16, 2003, Plaintiff sent an Inmate Concern Form to Defendant Mahaney, asking when the Friday Muslim prayer services were held.  Mahaney answered: "Mr. Wallmuller, we spoke briefly in the Halls of [illegible].  We discussed what needs to be done.² We will talk soon."  *Amended Complaint*, Exhibit A (Docket No. 111).  Neither Plaintiff nor Mahaney addressed the issue again with each other until Plaintiff raised it in a grievance, which is discussed hereafter.  In fact, Plaintiff did not raise a religious issue again until late October, and when he did, it was not the Jumu'ah issue.  The Court now discusses Plaintiff's written complaints about religious issues in

---

²Neither party clarified what this statement means.

**MEMORANDUM ORDER  7**

chronological order.

On October 28, 2003, Plaintiff sent an inmate concern form to the SICI kitchen manager complaining that he should be receiving three meals a day during his observance of Ramadan. On October 30, 2003, the kitchen manager told him that, according to the Chaplain, the fasting period is from sunrise to sunset, and there is no lunch, only breakfast and dinner. *Amended Complaint*, Exhibit B. On October 31, 2003, Plaintiff sent an inmate concern form to Warden Bennett complaining about not receiving three meals a day during Ramadan. Warden Bennett replied the same day: "This is your choice. You can choose to participate in Ramadan or not. You may not do both." *Amended Complaint*, Exhibit C.

On November 8, 2003, Plaintiff complained that staff tried to give him a regular breakfast tray after dawn; he was upset because he was observing Ramadan. *Amended Complaint*, Exhibit D. On November 10, 11, and 12, Plaintiff complained that staff refused to give him a lunch tray, and deemed it persecution due to his religious beliefs. *Amended Complaint*, Exhibits E, G, & I. On November 12, Plaintiff complained that the Ramadan food portions were smaller than the portions of food he was given prior to Ramadan. *Amended Complaint*, Exhibit F.

On November 10, 2003, Plaintiff submitted a concern form complaining of lack of chapel prayer time for Muslims to Warden Bennett. Warden Bennett responded to the concern stating, "I've never received a request about Muslim activity. Nobody is being discriminated against. This is a stretch, even for you. Please don't make frivolous

**MEMORANDUM ORDER  8**

claims." *William Loomis Affidavit*, Exhibit D  (Docket No. 121, Attachment #3).

Plaintiff sent another concern form to Warden Bennett the same day, stating:

> If you had checked with the SICI religious activities coordinator, you would have learned that I asked him about Muslim activity.  I didn't make a frivolous claim!  I asked a question – which I still have not had answered by SICI R.A.C. or you now.  When do Muslims get a time on Friday to have prayer service at SICI?  I have a right to my beliefs.

*Loomis Affidavit*, Exhibit E.  On November 14, 2003, Warden Bennett answered:  "You have a right to pray anytime.  If you have difficulty doing so, please concern Mr. Mahaney and arrangements will be made."  *Id*.

Plaintiff did not contact Mahaney to arrange chapel time.  Rather, on November 25, 2003, Plaintiff submitted a grievance form complaining that he had not been given chapel time.  Mahaney responded:

> Mr. Wallmuller, all you had to do in order to have a Muslim prayer time was ask me.  However, you did not follow-up in the matter of Muslim prayer time and because of that, I was unaware of the need for it.  If you had followed up, I would have arranged a time for Muslim prayer time.

*Loomis Affidavit*, Exhibit C.

   1.   <u>Injunctive and Declaratory Relief Requests</u>

Defendants argue that Plaintiff's requests for injunctive and declaratory relief are moot.  The Court agrees.  In *McQuillon v. Schwarzenegger*, 369 F.3d 1091 (9th Cir. 2004), the Court explained the mootness doctrine relative to requests for injunctive and declaratory relief:

> "A case becomes moot 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'"  *See*

**MEMORANDUM ORDER  9**

> *Porter v. Jones*, 319 F.3d 483, 489 (9th Cir. 2003) (quoting *Clark v. City of Lakewood*, 259 F.3d 996, 1011 (9th Cir. 2001)). McQuillon's release extinguishes his legal interest in an injunction because it would have no effect on him. *See Bernhardt [v. County of Los Angeles]*, 279 F.3d 862,

*Id*. at 1095.

Because Plaintiff has completed his prison sentence and has been released, he is not entitled to the injunctive or declaratory relief requested. Ordering the prison to provide Plaintiff with prayer time or a third meal would not afford Plaintiff any relief because he is no longer imprisoned.

Dismissal of the injunctive and declaratory relief requests is also in harmony with the Prison Litigation Reform Act (PLRA). Title 18 U.S.C. § 3626 limits the type of prospective relief available in prison conditions lawsuits brought under 42 U.S.C. § 1983. Under that section, the term "prospective relief" is defined as "all relief other than compensatory monetary damages." 18 U.S.C. § 3626(g)(7). Particularly, 18 U.S.C. § 3626(a)(1)(A) limits such relief as follows:

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

In this instance, no prospective relief of the type requested by Plaintiff is necessary to protect his constitutional rights. Accordingly, Plaintiff's claims for injunctive and

**MEMORANDUM ORDER  10**

declaratory relief are subject to summary judgment.

      2.      <u>Claims for Damages against IDOC Defendants in their Official Capacity</u>

Defendants next assert that Plaintiff's claims for damages against IDOC Defendants Bennett and Hardison in their official capacity are barred by the Eleventh Amendment. The Court agrees. The United States Supreme Court has determined that the Eleventh Amendment generally prohibits litigants from bringing suit for monetary damages against states, state agencies, and state officials acting in their official capacity. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc*., 506 U.S. 139 (1993). Hence, the official capacity claims are subject to summary judgment.

      3.      <u>Plaintiff's RLUIPA Claim</u>

Plaintiff has asserted claims under the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. § 2000cc, *et seq*. RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person  . . . is in furtherance of a compelling governmental interest and . . . is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000 cc-1(a). The RLUIPA applies to entities receiving federal financial assistance. *Id*. at (b)(1). Plaintiff bears the burden of producing evidence to demonstrate that Defendants imposed a substantial burden on his religious beliefs. *Warsoldier v. Woodford*, 418 F.3d 989, 994-95 (9th Cir. 2005) (relying on 42 U.S.C. § 2000cc-2.

**MEMORANDUM ORDER  11**

There is insufficient evidence in the record to determine whether Defendant Mahaney is entitled to summary judgment on Plaintiff's RLUIPA claim. It is unclear whether Mahaney intentionally denied Plaintiff chapel prayer time (which would support a RLUIPA claim), or whether conversations between Mahaney and Plaintiff either (1) showed that Plaintiff should have followed up with Mahaney to set up the service or (2) resulted in a simple misunderstanding (neither of which would support a RLUIPA claim). There is also no evidence of whether Jumu'ah requires more than one inmate to constitute a "congregation," and whether other Muslims were interested in starting a Friday service. Plaintiff has failed to comply with Defendants' requests for deposition,[3] and Defendant Mahaney has not filed his own summary judgment motion. Therefore, the Court has insufficient information to fully consider whether the RLUIPA claim against Mahaney should proceed or be dismissed. The Court will presently deny Mahaney's Joinder in the IDOC Defendants' Motion for Summary Judgment without prejudice.

The RLUIPA claims fail against IDOC Defendants Bennett and Hardison because (1) they were not even aware of the Friday services deprivation during the time period at issue in the Complaint, and (2) the failure to provide three meals instead of two meals during Ramadan does not show that Plaintiff's religion was "substantially burdened." Rather, the prison was making a reasonable effort to follow the Muslim Ramadan meal

---

[3]Plaintiff is incorrect in assuming that Defendant Mahaney's counsel cannot ask Plaintiff questions at a deposition noticed by the IDOC Defendants. In addition, Mahaney has joined the IDOC Defendants' motion regarding Plaintiff's failure to attend a deposition.

**MEMORANDUM ORDER  12**

schedule.  The Court is unaware of any other case requiring Muslims to be served the equivalent of three meals, rather than two meals, during Ramadan.  Therefore, Defendants Bennett and Hardison are entitled to summary judgment on Plaintiff's RLUIPA claims.

        4.       <u>Plaintiff's First and Fourteenth Amendment Claims</u>

As above, the Court has insufficient information to rule upon Plaintiff's claim against Mahaney that the failure to allow him to have Jumu'ah prayer services in the chapel between June and November violated his constitutional rights under § 1983.  Section 1983 is available only for the redress of intentional deprivations of constitutional rights, and not for negligent acts or misunderstandings.  *See, e.g, Youngbear v. Thalacker*, 174 F.Supp. 2d 902, 916 (D. Iowa 2001) ("There can be no 'negligent' violations of an individual's right to equal protection."  "There is no evidence from which the court may infer that the defendants' asserted reasons for delaying the construction of a sweat lodge at the FDCF were a pretext for discrimination.").  Because the Court does not have sufficient facts before it, Defendant Mahaney's Joinder in the IDOC Defendants' Motion for Summary Judgment is denied without prejudice.

As to the IDOC Defendants, Plaintiff has failed to show that either Bennett or Hardison caused the deprivation of the Friday prayer services.  Defendant Bennett did not hear about the deprivation until the November 10, 2003 concern form, and he responded that he had not previously heard of the alleged deprivation.  When Plaintiff clarified his request in a second concern form of November 10, 2003, the Warden told him to contact Chaplain Mahaney if he had difficulties scheduling prayer.

**MEMORANDUM ORDER  13**

Defendant Hardison merely responded to Plaintiff's grievance of November 25, 2003. In either case, it is impossible for Defendants who were advised of deprivations in mid-November to have caused deprivations to have occurred from June 13, 2003, to November 7, 2003, as specified in the Amended Complaint (Docket No. 111). Accordingly, Defendants Bennett and Hardison are entitled to summary judgment on the second claim. *See Arnold v. International Business Machines Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981) (an essential element of a § 1983 case is that the plaintiff show that the defendants' actions *caused* the deprivation of a constitutional right).

As to Plaintiff's second claim, the Court concludes that Plaintiff has failed to show that he is constitutionally entitled to *three meals* a day during Ramadan, when the prison provides a pre-sunrise meal and a post-sunset meal consistent with the Muslim religion. *See, e.g., Shabazz*, 482 U.S. at 352 (Affirming prison's restrictions on other religious activities of Muslims, the Court noted: "During Ramadan, Muslim prisoners are awakened at 4:00 a.m. for an early breakfast, and receive dinner at 8:30 each evening. We think this ability on the part of respondents to participate in other religious activities of their faith supports the conclusion that the restrictions at issue here were reasonable.).

The facts show that prison officials were attempting to accommodate in a reasonable manner those Muslims observing Ramadan by providing a pre-sunrise and post-sunset meal. Therefore, Plaintiff's First and Fourteenth Amendment claims regarding the Ramadan fasting period fail the first prong of the *Saucier* test. Further, after Plaintiff's flurry of seemingly contradictory concern forms, it appears that the

**MEMORANDUM ORDER  14**

correctional officers' offering of food or failure to offer food to Plaintiff during Ramadan was a mistake at the least, or negligence at the most; in any event, these officers are not defendants, and mistakes and negligent behavior are not actionable under § 1983.

Alternatively, even if Plaintiff stated a First and Fourteenth Amendment claim, Defendants are entitled to qualified immunity.  There is no clearly established law showing that Muslims observing Ramadan must be provided with three meals a day when their religious schedule calls for meals twice a day.  *See id.*

The Court sees no equal protection problem, because Muslims fasting for Ramadan and eating meals on an accommodated religious schedule are not similarly situated to prisoners eating three meals a day on the prison's schedule.  *See Tigner v. Texas*, 310 U.S. 141, 147 (1940) ("The Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same.").  Further, even if Plaintiff stated an equal protection claim, qualified immunity would apply because Defendants would not have been on notice that following the Ramadan schedule would be an equal protection violation, given that the contours of such a right have not been fleshed out in prior case law.

For all of the foregoing reasons, Defendants Mahaney, Bennett, and Hardison are entitled to summary judgment on Plaintiff's second claim.

**MEMORANDUM ORDER  15**

### III.

### ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Plaintiff's Motion to Quash (Docket No. 112) is DENIED.

IT IS FURTHER HEREBY ORDERED that Defendants' Motion to Compel (Docket No. 116) is GRANTED. The parties shall follow the procedures set forth above in order to schedule the deposition in Boise. Plaintiff's failure to attend may result in dismissal of all remaining claims with prejudice.

IT IS FURTHER HEREBY ORDERED that Plaintiff's Motion to Allow Telephonic Deposition of Plaintiff (Docket No. 120) is DENIED.

IT IS FURTHER HEREBY ORDERED that Defendant Bennett's and Hardison's Motion for Summary Judgment (Docket No. 121) is GRANTED in full, and Defendant Mahaney's Joinder in the Motion for Summary Judgment (Docket No. 123) is GRANTED in part except as to Plaintiff's claims that he was intentionally denied Friday prayer services in the chapel under RLUIPA and the First and Fourteenth Amendments. Defendant Mahaney may refile a motion for summary judgment no later than February 28, 2005.

IT IS FURTHER HEREBY ORDERED that Plaintiff's Supplemental Affidavit (Docket No. 133) is STRICKEN for untimeliness.

IT IS FURTHER HEREBY ORDERED that Defendants' Motion to Strike Plaintiff's Response at Docket No. 129 (Docket No. 132) is DENIED.

**MEMORANDUM ORDER 16**



DATED:  **December 2, 2005**

*/s/ Mikel H. Williams*

Honorable Mikel H. Williams
United States Magistrate Judge

**MEMORANDUM ORDER  17**